IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00491-PAB-MEH

AMY BULLOCK, as an individual, as the next of kin and personal representative of JEFFREY BULLOCK, deceased, and as parent and next friend of ADAM BULLOCK, CHELSEA BULLOCK, and MELISSA BULLOCK,

    Plaintiffs,

v.

DAIMLER TRUCKS NORTH AMERICA, LLC, formerly known as Freightliner, LLC, and PENSKE TRUCK LEASING COMPANY, L.P.,

    Defendants.

## ORDER AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Before the Court is Plaintiffs' Motion for Leave to File Third Amended Complaint ("Motion for Leave") [filed March 27, 2009; docket #106]. The motion is referred to this Court for disposition [docket #108]. Defendants filed their respective responses [dockets #116 & 117], and Plaintiffs replied [docket #122]. Oral argument would not materially assist the Court in adjudicating this motion. For the reasons stated below, the Court **ORDERS** Plaintiff's Motion be **GRANTED** as to Defendant Daimler and **RECOMMENDS** Plaintiff's Motion be **DENIED** as to Defendant Penske.[1]

---

[1] The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy of this Recommendation may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d

**I.    Background**

Plaintiffs bring a wrongful death action against Defendants for the death of Plaintiff Amy Bullock's spouse and Plaintiffs Adam, Chelsea, and Melissa Bullock's natural parent, Jeffrey Bullock. Mr. Bullock was employed as a truck driver with Dominos Pizza, LLC, and twice per week made deliveries to mountain locations in Colorado. (Docket #95 at 3.) During one such delivery, Donald Green, Mr. Bullock's co-driver, lost control of the vehicle and collided with the guard rail, causing the vehicle's tractor and trailer to go "off the side of the road and down an embankment before coming to a rest." (*Id*. at 4.) Mr. Bullock had been sleeping in the sleeper compartment of the truck tractor while Mr. Green was driving, and Plaintiffs contend the sleeper compartment "failed" during the accident causing Mr. Bullock to be thrown from the vehicle. (*Id*.) Plaintiffs state Mr. Bullock died from "traumatic internal injuries" at the accident scene as a result of the sleeper compartment's alleged failure. (*Id*.)

Plaintiffs contend Defendant Daimler defectively designed and manufactured the sleeper compartment per Defendant Penske's specifications. (*Id*. at 6.) Plaintiffs allege the sleeper compartment lacks appropriate crashworthiness and an adequate restraint system. (*Id*.) Plaintiffs claim products liability based on negligence and strict liability against both Defendants and seek compensatory damages for economic and non-economic losses plus interest, fees and costs. (*Id*. at 6-9.)

Plaintiffs filed an initial Motion for Leave to File Second Amended Complaint in August 12, 2008, within the deadline set for joinder of parties and amendment of pleadings in this matter. (Docket #32.) In addition to their unopposed request to correctly identify both Defendants based

---

1159, 1164 (10th Cir. 1986).

on Defendants' submitted Disclosure Statements, Plaintiff sought to add punitive damage claims against both Defendants pursuant to Colo. Rev. Stat. § 13-21-102(1.5)(a). This statute prohibits the inclusion of a claim for punitive or exemplary damages in the initial claim for relief but allows exemplary damages to be claimed by amendment only after the exchange of initial disclosures and after a plaintiff establishes "*prima facie* proof of a triable issue." In their first Motion for Leave, Plaintiffs relied on expert reports evaluated by the Pennsylvania Supreme Court in *Hutchinson v. Penske Truck Leasing Co. et al. and Freightliner, LLC*, as well as "the existence of the sleeper compartment door in itself" as *prima facie* proof of a triable issue allowing a claim for punitive damages. 876 A.2d 978, 985-6 (Pa. 2005). Defendants contested the proposed amendment and asserted Plaintiffs failed to meet the evidentiary standard required to establish *prima facie* proof allowing amendment. The Court agreed and recommended Plaintiff's first Motion for Leave be denied without prejudice, insofar as the discovery process at that stage of the proceedings rendered Plaintiffs' Motion for Leave to amend for punitive damages premature. (Docket #47 at 5.)

Plaintiffs submitted this second Motion for Leave on March 27, 2009. (Docket #106.) Plaintiffs bring their claim pursuant to Colo. Rev. Stat. § 13-21-203(3)(a), the Colorado Wrongful Death Act. (*Id*. at 2-3.) Plaintiffs believe they obtained adequate *prima facie* support for an award of punitive damages, after having conducted discovery. (*Id*. at 2.) In support of their request for claiming exemplary damages against Defendant Daimler, Plaintiffs include three expert reports; deposition testimony from Norman E. Ritchie, a representative of Freightliner; three University of Michigan studies regarding heavy trucks; Mr. Ritchie's notes from the Society of Automotive Engineers' crashworthiness subcommittee meeting; deposition testimonies from separate cases against Freightliner; and product testing procedures outlines. (*Id*. at 3-18.) Plaintiffs contend that

Defendant Daimler "designed a heavy truck with a bunk restraint system that did not protect against the dangers of an occupant in the bunk of the tractor from being thrown side-to-side," despite knowing that "rollover accidents were the greatest threat to occupants of a heavy truck tractor." (*Id*. at 22.) In support of their request against Defendant Penske, Plaintiffs rely on deposition testimony by William A. Ritchings, a Vehicle Supply Specialist for Defendant Penske, to allege Penske demonstrated recklessness with regards to "specifically select[ing] the sleeper door option for this truck." (*Id*. at 18-22.) Moreover, Plaintiffs believe both Defendants demonstrate willful and wanton conduct by not subjecting the sleeper bunk access door to any crashworthiness testing. (*Id*. at 22.)

In response, Defendant Daimler contests the Plaintiffs' theory of liability and claims Plaintiffs "attempt[ ] to indict the entire industry for installing access doors on sleeper cabs." (Docket #117 at 3.) Defendant Daimler asserts Plaintiffs fail to demonstrate "the most obvious and relevant factor in a punitive damages inquiry - prior notice or knowledge" that Freightliner was aware of similar accidents occurring with a Freightliner or similar truck. (*Id*.) Defendant Daimler conclusively states it lacks the "evil motive accompanying an alleged wrongful act, or intentional disregard of the Plaintiff's rights and safety" necessary to "justify punitive damages." (*Id*. at 12.)

Defendant Penske's response echoes that of Defendant Daimler, in that Defendant Penske believes the Plaintiffs fail to provide facts or evidence supporting a claim for exemplary damages against Penske. (Docket #116 at 3.) Defendant Penske asserts that its own reliance on the manufacturers to test safety and crashworthiness of the vehicles it purchases, as well as to "track government regulations," cannot establish the requisite showing of willful and wanton conduct as Plaintiffs allege. (*Id*. at 4.) Defendant Penske contends that Defendant Freightliner's responses to the Plaintiffs' interrogatories clearly establish Freightliner as the designer of the product in question,

to the exclusion of Penske, thereby demonstrating Penske's nonparticipation in the design and manufacture of the semi-tractor model in dispute. (*Id*. at 6-8.)

In their combined reply, Plaintiffs reiterate their argument that both Defendants' conduct "created a substantial risk of harm to others and was purposefully performed with an awareness of the risk," thereby constituting willful and wanton conduct. (Docket #122 at 2.) Plaintiffs assert that both Defendants demonstrated "a lack of concern for the crashworthiness of this vehicle," due to the defective design of the sleeper compartment door and safety restraint system. (*Id*. at 3.) Moreover, Plaintiffs contend Defendants knew about the danger of rollover accidents and the danger of passenger ejection as a result of a rollover accident, yet still "failed to test the crashworthiness of the sleeper compartment door" and failed to incorporate an effective restraint system within the compartment. (*Id*. at 3-4.)

**II.     Discussion**

Under Fed. R. Civ. P. 15(a), a party may amend its pleading once as a matter of course at any time before a responsive pleading is served. Once a responsive pleading is filed, a party may amend its complaint only by leave of the court or by written consent of the adverse party. *See Foman v. Davis,* 371 U.S. 178, 182 (1962). The grant or denial of leave is committed to the discretion of the district court. *See Duncan v. Manager, Dep't of Safety, City and County of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005). The Court must heed Rule 15's mandate that leave is to be "freely given when justice so requires." Fed. R. Civ. P. 15(a); *Foman,* 371 U.S. at 182; *Duncan*, 397 F.3d at 1315. "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman,* 371 U.S. at 182. Leave to amend should be refused "only on a showing of undue delay, undue prejudice to the

opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan*, 397 F.3d at 1315; *see also Foman,* 371 U.S. at 182.

Plaintiffs bring their suit pursuant to Colorado's Wrongful Death Act ("WDA"), Colo. Rev. Stat. § 13-21-202. (Docket #95 at 1.) In Colorado, exemplary or punitive damages are available only by statute. *Stamp v. Vail Corp. et al.*, 172 P.3d 437, 447 (Colo. 2007) (citing *Kaitz v. Dist. Court*, 650 P.2d 553, 556 (Colo. 1982)). Plaintiffs seek to amend under the WDA's exemplary damages provision, § 13-21-203(3)(a), which states:

> In all actions brought under section 13-21-201 or 13-21-202 in which damages are assessed by the trier of fact, and the death complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the trier of fact, in addition to the actual damages, may award reasonable exemplary damages.   § 13-21-203(3)(a).

The WDA does not allow a claim for exemplary damages in any initial claim for relief, but permits such claims to be added by amendment sixty days after the exchange of Rule 26 initial disclosures and demonstration by plaintiff of "*prima facie* proof of a triable issue" of exemplary damages. Colo. Rev. Stat. § 13-21-203(3)(c)(I). In accordance with Colo. Rev. Stat. § 13-21-102(1.5)(a), which shares a similar method of analysis, it is the discovery process, not the initial complaint, that is anticipated to supply the requisite *prima facie* evidence. *Stamp*, 172 P.3d at 449. *Prima facie* proof "may be established through discovery, by evidentiary means, or by an offer of proof." *Id*. The evidence submitted must show "a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Id*. (quoting *Leidholt v. Dist. Court*, 619 P.2d 768, 771 n.3 (Colo. 1980)). In *Stamp*, the Colorado Supreme Court evaluated "party and witness depositions, expert affidavits, and police reports" provided by the plaintiff and concluded discovery "supplied [plaintiffs] with the requisite prima facie proof." *Id*.

"'Willful and wanton conduct' means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." Colo. Rev. Stat. § 13-21-203(3)(b); *Coors v. Security Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005) (citations omitted). The *Coors* Court articulated that a plaintiff meets the requirements of the exemplary damages statute "[w]here the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result." *Id.* (citations omitted).

The Court believes Plaintiffs provide *prima facie* proof of a triable issue of exemplary damages with regards to Defendant Daimler, but not Defendant Penske, through the evidence submitted with their briefing on this Motion. The bulk of Plaintiffs' pleadings focuses on Freightliner's knowledge regarding the safety of the vehicle in question and the intricacies of the vehicle's design and manufacturing. Moreover, the evidence submitted by Plaintiffs regarding Freightliner far exceeds that of Penske, including the three expert reports, deposition testimony from Mr. Ritchie, three University of Michigan studies regarding heavy trucks, Mr. Ritchie's notes from the Society of Automotive Engineers' crashworthiness subcommittee meeting, deposition testimonies from separate cases against Freightliner, and product testing procedures outlines. This evidence, particularly the deposition testimonies of Mr. Ritchie and Mr. Koepke, indicates Defendant Freightliner knew of the risks posed by rollover accidents involving the vehicle model in question, including knowledge that rollover accidents implicated side-to-side motions, yet refrained from testing side-to-side impact within the "tent system" restraint. (*See* docket #106 at 14.) A jury could find such knowledge and conduct demonstrates recklessness without regard to the consequences giving rise to the facts of this matter; thus, the Court finds Plaintiffs establish *prima*

*facie* proof of a triable issue of exemplary damages as related to Defendant Daimler.

The Court recommends finding Plaintiffs did not establish the requisite *prima facie* proof as related to Defendant Penske. Nothing in the submitted evidence indicates Defendant Penske retained the same knowledge regarding the safety, crashworthiness, and general mechanics of the sleeper compartment in this matter as demonstrated by Defendant Daimler. The deposition testimony relied on by Plaintiffs conveys only the process by which companies place orders for vehicles through Defendant Penske, which are subsequently relayed to Defendant Daimler for production. The Court agrees with Defendant Penske that "Penske's reliance upon the semi-tractor manufacturers to test the vehicles" and "track government regulations" does not demonstrate the recklessness required for exemplary damages. (*See* docket #116 at 4.) The Court declines to attribute the knowledge of one defendant to the other based on such tenuous evidence.

The Court emphasizes to the parties that this order does not address the merits of awarding exemplary damages in this case, but limits the order to recognizing that the issue of exemplary damages against Defendant Daimler can properly be included in the pleadings at this point, therefore permitting Plaintiffs to amend their Second Amended Complaint. Because Plaintiffs will be filing a Third Amended Complaint, the Court directs Plaintiffs to include in their Third Amended Complaint substantive allegations of Defendant Daimler's conduct supporting a *prima facie* claim for exemplary damages.

### III.  Conclusion

Accordingly, for the reasons stated herein, the Court **ORDERS** Plaintiff's Motion be **GRANTED** as to Defendant Daimler and **RECOMMENDS** Plaintiff's Motion be **DENIED** as to Defendant Penske. Plaintiffs are directed to file their Third Amended Complaint consistent with this

Order and Recommendation within three days of the District Court's order regarding this matter.

Dated this 19th day of May, 2009 in Denver, Colorado.

                                         BY THE COURT:

                                         s/Michael E. Hegarty
                                         Michael E. Hegarty
                                         United States Magistrate Judge