IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-00491-PAB-MEH

AMY BULLOCK, as an individual, as the next of kin and personal representative of
JEFFREY BULLOCK, deceased, and as parent and next friend of
ADAM BULLOCK, CHELSEA BULLOCK, and MELISSA BULLOCK,

    Plaintiff,

v.

DAIMLER TRUCKS NORTH AMERICA, LLC,
formerly known as FREIGHTLINER, LLC,

    Defendant.
_____

## ORDER
_____

    Plaintiff Amy Bullock brought this product liability case against defendant Daimler Trucks North America, LLC ("Daimler") following a motor vehicle accident in which Ms. Bullock's husband, Jeffrey Bullock, was killed. On August 15, 2006, Mr. Bullock, a commercial truck driver for Dominos Pizza, was on a delivery route in the mountains of Colorado with co-driver Donald Green. On their way through Monarch Pass in Gunnison County, Colorado, the truck went off the road. At the time of the accident, Mr. Green was driving and Mr. Bullock was a passenger. Mr. Green survived the accident. Mr. Bullock suffered severe injuries in the accident and died at the scene.

    This matter is before the Court on plaintiff's Rule 702 motion to preclude the testimony of Harry L. Smith [Docket No. 175]. The motion is fully briefed and ripe for disposition.

# I. FEDERAL RULE OF EVIDENCE 702

Pursuant to Federal Rule of Evidence 702,

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient, that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, the Court must "perform[] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After "determin[ing] whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion," *id.* (quoting Fed. R. Evid. 702), the specific proffered opinions must be assessed for reliability. *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based upon sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods . . . to the facts of the case").

Rule 702 "imposes on the district court a gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). To execute that function, the Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a

particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). When assessing reliability, "the court may consider several nondispositive factors: (1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *103 Investors I*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94). These considerations are not exhaustive. Rather, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of any expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

While plaintiff, as the proponent of the challenged testimony, has the burden of establishing admissibility, her proffer is tested against the standard of reliability, not correctness; plaintiff need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008).

In sum, expert testimony must be excluded if the expert is unqualified to render an opinion of the type proffered, if the opinion is unreliable, if the opinion will not assist the trier of fact, or if the opinion is irrelevant to a material issue in the case.

## II. DISCUSSION

Daimler proffers Dr. Smith, a nuclear engineer and medical doctor, to offer testimony regarding Mr. Bullock's movements during the accident and his resulting traumatic injuries. Plaintiff does not challenge Dr. Smith's qualifications to offer these opinions. Rather, plaintiff challenges the admissibility of Dr. Smith's testimony on grounds that

> (1) Smith's opinions seem to be based on inaccurate facts and data; (2) Smith fails to apply the scientific principles and methods he claims to have use[d] appropriately in arriving at his opinions, including failing to exercise the intellectual rigor and professionalism that experts in the relevant fields would ordinarily employ in deriving their conclusions; and (3) Smith by ignoring important factual evidence in this case did not reliably apply a scientific methodology to the facts of this case.

Docket No. 175 at 2. These objections can be summarized as two contentions, i.e., that Dr. Smith did not have a sufficient factual basis and has failed to reveal the methodology he used to reach his conclusions.

Dr. Smith offers his opinion regarding the kinematics for Mr. Bullock, i.e., how his body likely moved during the accident sequence. Based on those kinematics, Dr. Smith also offers his medical opinion regarding the consistency of Mr. Bullock's injuries with such movement. Plaintiff is correct that Dr. Smith's opinion assumes the underlying scenario supplied by Dr. Robert Butler's accident reconstruction. That is not a basis to exclude Dr. Smith's opinion. *See* Fed. R. Evid. 703 (allowing experts to rely upon facts "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject"); *see also* Docket No. 217 (Pl.'s Reply) at 5 ("It is appropriate for Smith to rely on an accident reconstruction analysis conducted by another expert, when coming to his own independent conclusion in areas he is so

4

qualified to opine."); Docket No. 209-1 (Smith Aff.) at 3 (identifying accident reconstruction as part of a "recognized body of descriptive, theoretical, and experimental literature which serves as the foundation for the application of the principles of physical and medical science to injury causation analysis"). Rather, Dr. Smith's opinion is simply contingent on the jury's first accepting Dr. Butler's conclusions regarding what occurred. Therefore, while the Court agrees with plaintiff that Dr. Smith may not offer Dr. Butler's accident reconstruction opinions as his own, he may base his own opinions regarding injury causation upon the reconstruction.

Plaintiff also argues that Dr. Smith, when offering his opinions regarding the cause of Mr. Bullock's injuries, "provides no background facts and data to support these findings and conclusions." Docket No. 175 at 7. The Court disagrees. Dr. Smith cites a significant body of facts derived from three main sources. The first set of facts consists of Dr. Butler's accident reconstruction. As noted above, to the extent the conclusions reached by Dr. Butler are rejected by the jury, Dr. Smith's testimony will equally suffer.[1] The second set of facts consists of the information available concerning the nature and extent of Mr. Bullock's injuries at the time of his death.[2] Finally, Dr. Smith conducted his own vehicle inspection.

---

[1] It is worth noting that plaintiff's motion primarily attacks the reliability of Dr. Butler's opinion. That opinion, however, is the subject of a separate motion which the Court addresses by separate order.

[2] Plaintiff also takes issue with the accuracy of certain facts relied upon by Dr. Smith, such as his assumption that Mr. Bullock was unrestrained at the time of the accident. *See* Docket No. 175 at 9. However, "assessment of the 'sufficien[cy]' of the facts and data relied upon by the witness is a *quantitative*, not a qualitative, analysis," *Crabbe*, 556 F. Supp. 2d at 1223 (emphasis in original), and plaintiff does not contend that whether Mr. Bullock was restrained is a relevant fact.

5

The Court, however, agrees with plaintiff that Dr. Smith does not explain in his report the underlying methodology of injury causation analysis. Dr. Smith cites Dr. Butler's conclusions regarding the force of various impacts the truck made and then recounts the nature of Mr. Bullock's injuries. He does not, however, bridge the gap between the two by explaining the "reliable principles and methods," Fed. R. Evid. 702, that an expert in his field uses to determine that the latter was consistent with the former. The Court is not required to take his word for it. *See* Fed.R.Evid. 702 Advisory Committee Notes to the 2000 Amendments ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"); *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.").

In response to plaintiff's motion, however, Daimler attaches an affidavit by Dr. Smith. *See* Docket No. 209-1. In his affidavit, Dr. Smith provides a general discussion of the five main categories of evaluation employed to analyze injury causation: (1) vehicle dynamics, (2) occupant kinematics, (3) biomechanics, (4) injury potential, and (5) medical analysis. Docket No. 209-1 at 3. Dr. Smith states that "[o]nce the occupant kinematics and the range of magnitude and direction of the biomechanical stresses in a specific accident are understood, injury potential can then be similarly and rationally assessed using the analytical and descriptive techniques of clinical medical science in conjunction with available information about the range of human tolerance to physical forces." Docket No. 209-1 at 3. Dr. Smith asserts that he derived the vehicle dynamics data in this case from Dr. Butler's reconstruction, which contained certain necessary

6

data for his analysis, such as "vehicle roll rate," "principal directions of force . . . arising out of accelerations and decelerations," and "specific information about vehicle movement during the accident sequence." *See* Docket No. 209-1 at 8.[3] The Court is satisfied that Dr. Smith's experience and knowledge, combined with the application of the principles described in his affidavit, are sufficient to support his conclusions regarding how and where Mr. Bullock moved during the accident and whether such movements are consistent with his resulting injuries.

Therefore, it is

**ORDERED** that plaintiff's Rule 702 motion to preclude the testimony of Harry L. Smith [Docket No. 175] is DENIED.

DATED September 30, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

---

[3] Plaintiff also complains about the timing of Daimler's disclosure of details regarding Dr. Smith's methodology, i.e., in an affidavit attached to Daimler's response to plaintiff's Rule 702 motion. Had Dr. Smith tried to explain such details for the first time at trial, plaintiff would have had an appropriate basis to object that his failure to include them in his expert report precluded his testimony. However, while it is true that the proponent of an expert bears the burden of establishing the admissibility of any given opinion, Dr. Smith would, in any event, have had the opportunity to explain his methodology during the Rule 702 hearing originally scheduled in this case. The parties, however, jointly requested that the Court vacate such hearing and decide the Rule 702 motions based on the written submissions. Moreover, in response to many of Daimler's Rule 702 challenges to her experts, plaintiff cites her experts' deposition testimony as opposed to their expert reports.