IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-00491-PAB-MEH

AMY BULLOCK, as an individual, as the next of kin and personal representative of
JEFFREY BULLOCK, deceased, and as parent and next friend of
ADAM BULLOCK, CHELSEA BULLOCK, and MELISSA BULLOCK,

    Plaintiff,

v.

DAIMLER TRUCKS NORTH AMERICA, LLC,
formerly known as FREIGHTLINER, LLC,

    Defendant.

_____

**ORDER ON DEFENDANT'S RULE 702 MOTION**
_____

# I. INTRODUCTION

Plaintiff Amy Bullock brought this product liability case against defendant Daimler Trucks North America, LLC ("Daimler") following a motor vehicle accident in which Ms. Bullock's husband, Jeffrey Bullock, was killed. On August 15, 2006, Mr. Bullock, a commercial truck driver for Dominos Pizza, was on a delivery route in the mountains of Colorado with co-driver Donald Green. On their way through Monarch Pass in Gunnison County, Colorado, the truck went off the road. At the time of the accident, Mr. Green was driving and Mr. Bullock was a passenger. Mr. Green survived the accident. Mr. Bullock suffered severe injuries in the accident and died at the scene.

This matter is presently before the Court on defendant Daimler's motion to exclude the testimony of accident reconstructionist and engineer Michael McCort, one

of Ms. Bullock's expert witnesses, under Federal Rule of Evidence 702 [Docket No. 189].

## II. FEDERAL RULE OF EVIDENCE 702

Pursuant to Federal Rule of Evidence 702,

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient, that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, the Court must "perform[] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After "determin[ing] whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion," *id.* (quoting Fed. R. Evid. 702), the specific proffered opinions must be assessed for reliability. *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based upon sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods . . . to the facts of the case").

Rule 702 "imposes on the district court a gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). To execute that

2

function, the Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). When assessing reliability, "the court may consider several nondispositive factors: (1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *103 Investors I*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94). These considerations are not exhaustive. Rather, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of any expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

While plaintiff, as the proponent of the challenged testimony, has the burden of establishing admissibility, her proffer is tested against the standard of reliability, not correctness; plaintiff need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008).

In sum, expert testimony must be excluded if the expert is unqualified to render an opinion of the type proffered, if the opinion is unreliable, if the opinion will not assist the trier of fact, or if the opinion is irrelevant to a material issue in the case.

## III. PLAINTIFF'S EXPERT – MICHAEL MCCORT

Defendant's Rule 702 motion challenges several opinions of plaintiff's accident reconstruction expert and mechanical engineer, Michael McCort. *See generally* Def. Daimler Trucks North America, LLC's FRCP [sic] 702 Mot. to Exclude Test. & Ops. of Michael McCort [Docket No. 189] ("Def.'s McCort Mot."). Mr. McCort states five opinions in his report:

1. The subject accident was initiated as a result of Donald Green's loss of control while traveling westbound on C-50.

2. The tractor-trailer yawed counter clockwise and rolled one-quarter time onto its right side.

3. The tractor roof sustained two separate impacts. One with the guardrail and another with a tree.

4. The tractor-trailer did not roll throughout its trajectory from road to point of rest at the bottom of the embankment.

5. Mr. Bullock came out of the tractor through the right side sleeper hatch opening at a point in time between when the tractor approached the embankment to when the tractor sustained the secondary impact with the tree.

Pl.'s Resp. to Def's. FRCP 702 Mot. to Exclude Test. & Ops. of Michael McCort [Docket No. 205] ("Pl.'s Resp. to McCort Mot.") at 1-2, ex. 1 at 8-9. Defendant asks the Court to prohibit Mr. McCort from testifying as to:

1. Any opinion that Mr. Bullock was ejected from the tractor during the accident;

4

> 2. Any opinion that the sleeper cab access door was the portal of Mr. Bullock's alleged ejection;
>
> 3. Any opinion regarding the alleged defectiveness of the sleeper compartment access door.

Def.'s McCort Mot. at 15.

Although Daimler's Rule 702 motion appears to criticize some of Mr. McCort's first four opinions, the three rulings that Daimler requests do not cover those opinions. Daimler's reply attempts to bring the third and fourth opinions into contention, but Daimler may not amend its motion by way of its reply. Therefore, because Daimler's motion did not request that the Court exclude Mr. McCort's first four opinions, the Court does not address them.

Daimler's first and second requests relate to Mr. McCort's fifth reported opinion, that Mr. Bullock was ejected through the sleeper compartment door. Daimler's third request – to preclude Mr. McCort from testifying regarding the alleged defectiveness of the sleeper compartment access door – is not ripe. Mr. McCort has not offered an opinion on this topic, nor is there any indication that he intends to do so. Therefore, the Court will not rule on this question unless and until it appears to be in actual controversy in the case. As a consequence, the portion of Daimler's motion dealing with the defectiveness of the sleeper compartment access door is denied.

Turning to Daimler's other two challenges, Daimler insinuates, without directly arguing, that Mr. McCort's knowledge, skill, experience, training, or education fails to qualify him as an expert about this particular accident. *See* Def.'s McCort Mot. at 9 (stating that Mr. McCort "never, before this case, performed an investigation or analysis

5

of a tractor-trailer rollover accident . . . [or] analyzed or investigated a case involving an alleged ejection from bunk access door on a class 8 tractor."). Mr. McCort's qualifications, as detailed in plaintiff's response, *see* Pl.'s Resp. to McCort Mot. at 5-6, are more than sufficient to state opinions regarding the reconstruction of this accident. *Cf. Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) ("[A]s long as an expert stays within the reasonable confines of his subject area, our case law establishes a lack of specialization does not affect the admissibility of the expert opinion, but only its weight." (quoting *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1520 (10th Cir.1996)) (quotation marks and alteration marks omitted)).

Daimler next challenges the reliability and relevance of Mr. McCort's specific opinion that Mr. Bullock was thrown out of the tractor through the sleeper bunk access door on the right side of the tractor. Daimler objects to two aspects of this opinion. First, it takes issue with the conclusion that Mr. McCort was ejected during the accident. Second, Daimler challenges Mr. McCort's conclusion that the ejection occurred through the sleeper bunk access door.

Daimler claims that Mr. McCort "performed no calculations, conducted no testing, cited no studies, and based his conclusions on his own intuition, rather than on any repeatable methodology." Pl.'s McCort Mot. at 10. From Daimler's perspective, no reliable opinion about whether or how Mr. Bullock was ejected from the tractor can be formed without calculating the rate of rotation, center of gravity, and change in velocity of the tractor and the trailer. Daimler criticizes Mr. McCort for not following the same modeling approach as Daimler's experts and concludes that there is a "lack of *any*

6

scientific methodology or data underlying [Mr. McCort's] opinions." Pl.'s McCort Mot. at 10 (emphasis added).

In her response, plaintiff describes Mr. McCort's methodology in detail. Plaintiff starts by noting that "McCort has done hundreds of vehicle rollover reconstructions. The methodology he used in this case was identical to the methodology he has used in his previous vehicle rollover reconstructions." Pl.'s Resp. to McCort Mot. at 8 (citations and quotation marks omitted). Plaintiff then proceeds to explain Mr. McCort's general approach:

> McCort reviewed documents which were provided to him including the accident reports (both the original and amended/supplemental), engine control module download printouts, eDriver logs, a GPS location report, vehicle registration information, driver history records, a crash reconstruction report prepared by William D. Carlson, multiple depositions, weather reports, the coroner and autopsy reports, hundreds of photos, hospital records for the driver, witness statements, 911 dispatch transcript, Vehicle Inspection Reports, and Freightliner engineer drawings of multiple components on the truck.
>
> McCort also performed inspections and collected detailed measurements of the accident scene and the subject tractor/trailer units on September 7th, 2006 (just three weeks after the incident occurred). . . . The measurements and data obtained in these surveys were downloaded at McCort's office to produce an Auto CAD file for him to work with.

Pl.'s Resp. to McCort Mot. at 8 (citations omitted).

Mr. McCort's analysis began with the physical evidence, data, and testimony related to the scene, the actors, and the event. This evidence included, among other things, eyewitness accounts, marks on the roadway, speed information, depictions of the condition and location of the truck, the roadway, the road structures, the landscape,

7

Mr. Bullock's location, and various outside sources of data. Mr. McCort then used this evidence to deduce what, in his opinion, was the most likely account of the accident.

As part of his deduction, Mr. McCort performed calculations to determine the speed and trajectory of the vehicle and the forces acting upon it. He also used modeling software to predict the general location of the tractor and trailer throughout the accident. He compared those results with the evidence about the accident site. In assessing the timing and degree of damage to the sleeper compartment hatch, Mr. McCort analyzed the scratch patterns, which materials were damaged and how, and the final condition of the vehicle.

Daimler does not suggest that any of the techniques are, by their nature, unacceptable in the field of accident reconstruction. Instead, the thrust of Daimler's argument is that Mr. McCort should have engaged in additional analysis in order to arrive at more accurate conclusions. However, "[a]dmissibility under Rule 702 does not require perfect methodology." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 181 (6th Cir. 2009); *cf. Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004) ("The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community. Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999))). In other words, "Rule 702 and *Daubert* do not require an expert to use the best method available, they only require that the evidence be relevant and reliable." *Adel v.*

*Greensprings of Vermont, Inc.*, 363 F. Supp. 2d 683, 689 (D. Vt. 2005).  Therefore, the fact that Mr. McCort could have conducted additional calculations does not, by itself, make his methodology unreliable.

Mr. McCort's opinion that Mr. Bullock was ejected through the sleeper compartment door is not adequately supported in Mr. McCort's expert report.  However, he provides a sufficient amount of support for this opinion in his deposition testimony to make it admissible.  He identifies the sleeper compartment door as one of two possible ejection points.  *See* Def.'s McCort Mot., ex. N, 128:23 to 129:21.  The fact that this door was the closest door to Mr. Bullock at the time of the accident makes it an obvious possibility.  Mr. McCort explains why, based on the forces at play, *see* Pl.'s Resp. to McCort Mot., ex. 3, 124:21-25; Def.'s McCort Mot., ex. N, 125:4 to 127:19, the obstructions to the front, *see* Def.'s McCort Mot., ex. N, 129:2-10, and the physical evidence, *see* Def.'s McCort Mot., ex. N, 129:10-20, he believes that Mr. Bullock was ejected from the sleeper compartment as opposed from the front passenger door.  He also explains why ejection from the sleeper compartment at an earlier point in time during the accident places Mr. Bullock at the location where the paramedics found him.  *See* Pl.'s Resp. to McCort Mot., ex. 3, 98:21 to 99:15.  The Court concludes that Mr. McCort's opinion that decedent was ejected through the sleeper compartment door is the product of a sufficiently reliable methodology and analysis of the facts to be admissible.

Daimler also makes what is essentially a comparative argument: its experts utilize a better methodology than Mr. McCort.  Having determined that Mr. McCort's

9

methodology is reliable, however, the Court need not determine if it is more or less reliable than the methodology of defendant's experts. *See* Fed. R. Evid. 702 (Comments to 2000 Amendments) (citing *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 160 (3d Cir. 1999)). "Neither the district court nor [the circuit] court is in a position to declare or even to know with any degree of certainty whether otherwise admissible expert testimony is, in fact, correct." *Goebel v. Denver and Rio Grande Western R. Co.*, 346 F.3d 987, 994 (10th Cir. 2003). Once a court determines that an expert's methodology survives Rule 702 scrutiny, "it is up to the jury to decide whether the expert used the best or most reliable methodology, what weight to accord to his testimony and which of competing experts' opinions should be credited." *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1085 (D. Colo. 2006). Therefore, Daimler must resort to cross-examination and argument at trial to convince the jury of the alleged deficiencies in Mr. McCort's opinion. *Cf. Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1518 (10th Cir. 1996), *overruled on other grounds by Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ("[A]s long as a logical basis exists for an expert's opinion the weaknesses in the underpinnings of the opinion go to the weight and not the admissibility of the testimony." (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 663 (11th Cir. 1988)) (quotation, alteration, and omission marks omitted)).

Daimler's Rule 702 motion also suggests that Mr. McCort's opinions are irrelevant. "The Supreme Court has described the consideration of relevant evidence as one of 'fit.'" *Bitler*, 400 F.3d at 1234 (citing *Daubert*, 509 U.S. at 591). "Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant 'fit.'" *Bitler*, 400 F.3d at 1234 (citing *Daubert*, 509 U.S. at 591). Therefore, "[a] trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Bitler*, 400 F.3d at 1234.

Daimler's first relevance argument, that Mr. McCort did not consider all the evidence that he should have, was addressed in the Court's reliability discussion and is properly a question of reliability rather than relevance.

Daimler's second relevance argument asserts that Mr. McCort's opinions are irrelevant because "there is no evidence that Mr. Bullock was ejected from the truck during the accident, and all of Plaintiff's experts simply assumed that the ejection occurred at some point during the rollover." Def.'s McCort Mot. at 2. The Court disagrees. There is at least circumstantial evidence that Mr. Bullock was ejected from the truck during the accident. Mr. Bullock was in the truck before the accident. The driver, Mr. Green, believes that Mr. Bullock was in the sleeper compartment. Following a violent collision which left an opening in the sleeper compartment doorway, Mr. Bullock was found outside of the truck. No one has testified to seeing or participating in Mr. Bullock's removal from the truck. No one has claimed that Mr. Bullock was capable,

given his injuries, of getting out of the truck after the accident and moving approximately 23 feet away to where the paramedics found him. Furthermore, the earliest report from the scene of the accident, from an unknown witness who was recorded on a 911 call, said that Mr. Bullock was outside the truck when the witness arrived. *See* Def.'s McCort Mot., ex. J at 16 (internal pagination at 81). Therefore, there is evidence from which it could be reasonably concluded that Mr. Bullock was ejected from the truck during the accident and Mr. McCort's opinions are relevant to that inquiry.

The Court concludes that Mr. McCort's opinions that Mr. Bullock was thrown out of the tractor through the sleeper bunk access door on the right side of the tractor is both the product of a reliable methodology and applicable to the particular set of facts of this case. *See Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). Daimler's Rule 702 challenge to these opinions fails and its motion is denied.

## IV. CONCLUSION

Based on the foregoing, it is

**ORDERED** that defendant Daimler Trucks North America, LLC's Rule 702 motion to exclude certain testimony of plaintiff Amy Bullock's expert witness, Michael McCort [Docket No. 189] is DENIED.

DATED September 30, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge