**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 08-cv-00491-WJM-MEH

AMY BULLOCK, as an individual, as the next of kin and personal representative of JEFFREY BULLOCK, deceased, and as parent and next friend of ADAM BULLOCK, CHELSEA BULLOCK, and MELISSA BULLOCK,

    Plaintiffs,

v.

DAIMLER TRUCKS NORTH AMERICA, LLC, formerly known as Freightliner, LLC,

    Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Partial Summary Judgment Regarding Exemplary Damages. (ECF No. 241.) The motion is fully briefed and ripe for disposition. (*See also* ECF Nos. 244, 249.) The Court has putative subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on diversity jurisdiction. For the following reasons, Defendant's Motion for Summary Judgment Regarding Exemplary Damages is DENIED.

### I. BACKGROUND

**A.   FACTUAL BACKGROUND**

Unless otherwise noted, the following facts are not in dispute. This is an action brought by Jeffrey Bullock's surviving spouse and children, alleging that Defendant Daimler Trucks North America, LLC, wrongfully caused Bullock's death. (ECF No. 226, at ¶¶ 2, 8-9.) On the morning of August 15, 2006, Bullock and Donald Green were

riding in a tractor-trailer truck traveling west on Highway 50 in Gunnison County, Colorado, making deliveries as part of their employment with Dominos Pizza, LLC.  (*Id.* at ¶¶ 13-14, 16-18; ECF No. 231, at ¶¶ 13-14, 16-18.)  Defendant manufactured the tractor in which Bullock and Green were riding.  (ECF No. 226, at ¶ 16; ECF No. 231, at ¶ 16.)  Green was driving.  (ECF No. 226, at ¶ 15; ECF No. 231, at ¶ 15.)  Plaintiffs allege that Bullock was riding in the sleeper compartment of the tractor.  (ECF No. 226, at ¶ 15.)  Just before 7:00 am, Green lost control of the vehicle in a left hand curve.  (ECF No. 226, at ¶ 18; ECF No. 231, at ¶ 18.)  The tractor-trailer left the roadway, rolled, and came to rest at the bottom of an embankment.  (ECF No. 226, at ¶ 19; ECF No. 231, at ¶ 19.)  Bullock was killed as a result of the accident; Green was not.  (ECF No. 226, at ¶¶ 20-21; ECF No. 231, at ¶¶ 20-21.)  Plaintiffs allege that, as the truck slid over the embankment, Bullock was ejected from the vehicle through the door to the sleeper compartment.  (ECF No. 226, at ¶ 20.)

**B.     PROCEDURAL BACKGROUND**

Plaintiffs filed this action on March 10, 2008.  (ECF No. 1.)  They bring product liability claims against Defendant based on negligence and strict liability.  (ECF No. 226, at 10-12.)  Specifically, Plaintiffs allege that the tractor manufactured by Defendant was defective and unreasonably dangerous because the tractor was not crashworthy, the sleeper compartment was not crashworthy, and the sleeper compartment contained an inadequate restraint system (namely, the "tent system" restraint).  (*Id.;* ECF No. 244, at 4-5.)  They seek, among other things, exemplary damages.  (*Id.* at 12-13.)

In accordance with Colorado law, Plaintiffs did not bring a claim for exemplary

2

damages in their original complaint. *See* Colo. Rev. Stat. § 13-21-203(3)(c)(I). Instead, on March 27, 2009, after some discovery, Plaintiffs filed a motion for leave to amend their complaint to add a claim for exemplary damages, along with exhibits. (ECF No. 106.) Defendant filed a response to the motion, with its own exhibits (ECF No. 117), and Plaintiffs filed a reply brief (ECF No. 122).

On May 19, 2009, Magistrate Judge Michael E. Hegarty issued an order granting Plaintiffs' motion to amend, concluding that Plaintiffs' evidence established the requisite prima facie proof of a triable issue of exemplary damages as related to Defendant. (ECF No. 123, at 7-8.) *See* Colo. Rev. Stat. § 13-21-203(3)(c)(I). Magistrate Judge Hegarty stated that Plaintiffs' evidence indicated that Defendant

> knew of the risks posed by rollover accidents involving the vehicle model in question, including knowledge that rollover accidents implicated side-to-side motions, yet refrained from testing side-to-side impact within the 'tent system' restraint. [citation omitted] A jury could find such knowledge and conduct demonstrates recklessness without regard to the consequences giving rise to the facts of this matter . . . .

(ECF No. 123, at 7.) Defendant filed an Objection/Appeal. (ECF No. 126.)

On March 29, 2010, District Judge Philip A. Brimmer, to whom this action was previously assigned, held that Magistrate Judge Hegarty's decision was not clearly erroneous. (ECF No. 224.) In doing so, Judge Brimmer specifically rejected one of Defendant's arguments that Defendant reasserts in a similar way in its present motion for partial summary judgment. Specifically, Defendant argued that Plaintiff could not establish prima facie proof of conduct giving rise to exemplary damages where Plaintiffs put forward no evidence of a prior similar accident scenario. (*Id.* at 5-6.) The Court stated,

> Daimler's arguments are, in essence, reasons why the jury should not find it liable. Prima facie proof only requires a reasonable likelihood that the issue will be submitted to the jury. The magistrate judge did not err in concluding that evidence showing Daimler knew of the risks posed by rollover crashes but failed to test the side-to-side impact of their vehicles likely creates a triable issue of willful and wanton conduct.

(*Id.* at 6.)

On May 25, 2010, Defendant filed its motion for partial summary judgment, seeking dismissal of the exemplary damages claim. (ECF No. 241.) Plaintiffs filed their response (ECF No. 244), and Defendant filed a reply (ECF No. 249.)

On February 9, 2011, this action was reassigned to the undersigned. (ECF No. 320.)

## II. STANDARD OF REVIEW AND APPLICABLE LAW

While Colorado law governs the substantive underlying claims in this action, federal law governs the court's standard for summary judgment. *See Hill v. Allstate Ins. Co.*, 479 F.3d 735, 739 (10th Cir. 2007) ("In diversity cases, the laws of the forum state govern our analysis of the underlying claims, but [federal courts] are governed by federal law in determining the propriety of . . . summary judgment.") (internal quotation marks omitted). *See also Klein v. Grynberg*, 44 F.3d 1497, 1503 (10th Cir. 1995) ("In a diversity case, whether punitive damages are warranted is a matter of state law.").

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). When, as here, "the movant does not bear the ultimate burden of persuasion at trial, it may satisfy its burden

at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotations omitted).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also* Fed. R. Civ. P. 56(e).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party.  *Id.*; *see also McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).  A court must also view the evidence "through the prism of the substantive evidentiary burden."[1]  *Anderson*, 477 U.S. at 254.  *See also Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1127-29 (10th Cir. 2009).

Under Colorado's Wrongful Death Act, which forms the basis for Plaintiffs' lawsuit, "the trier of fact, in addition to the actual damages, may award reasonable exemplary damages" where "the death complained of is attended by circumstances of fraud, malice, or willful and wanton conduct . . . ."  Colo. Rev. Stat. § 13-21-203(3)(a). "'Willful and wanton conduct' means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff."  *Id.* § 13-21-102(1)(b); *see also id.* § 13-21-203(3)(b).  "Where the defendant is conscious of

---

[1] As discussed, *supra*, under Colorado law Plaintiffs have to show their entitlement to an award of exemplary damages beyond a reasonable doubt.

his conduct and the existing conditions and knew or should have known that injury would result, the statutory requirements of section 13-21-102 are met." *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005). *See also Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) ("Conduct is willful and wanton if it is a dangerous course of action that is consciously chosen with knowledge of facts, which to a reasonable mind creates a strong probability that injury to others will result.") (citation and internal quotations omitted). "Exemplary damages against the party against whom the claim is asserted shall only be awarded in a civil action when the party asserting the claim proves beyond a reasonable doubt the commission of a wrong under the circumstances set forth in section 13-21-102." Colo. Rev. Stat. § 13-25-127(2); *see also Coors*, 112 P.3d at 65.

When analyzing Colorado law on exemplary damages in the context of the federal standards for summary judgment, it is clear that Defendant's motion turns on whether the evidence, viewed in a light most favorable to Plaintiffs, is such that it might lead a reasonable jury to conclude, beyond a reasonable doubt, that Defendant was conscious of its conduct and the existing conditions and knew or should have known that injury would result.

### III. ANALYSIS

There are numerous factual disputes regarding the circumstances surrounding the accident at issue. However, the evidence, viewed in a light most favorable to Plaintiffs,[2] shows:

---

[2] Some of the evidence listed in this section of the order is opinion evidence of Plaintiffs' experts. The Court acknowledges that Defendants' experts have different,

- Bullock was riding in the sleeper compartment of the tractor at the time of the accident. (*See* ECF No. 106, Ex. 1, 131:12-15; ECF No. 205, Ex. 1, at 8; ECF No. 207, Ex. 1, at 34).

- The sleeper compartment access door opened during the course of the accident (ECF No. 206, Ex. 1, at 7; ECF No. 207, Ex. 1, at 34), and Bullock was ejected through that opening (ECF No. 205, Ex. 1, at 8-9).

- "[H]ad Mr. Bullock's body been contained in the subject vehicle through the sleeper cabin door remaining closed throughout the accident sequence, he would not have received the massive chest and abdominal injuries resulting in death. He would have been expected to receive injuries similar to those of the driver, Donald Green, which would be relatively minor, treatable and survivable injuries . . . ." (ECF No. 207, Ex. 1, at 41.)

- Norm Ritchie, Defendant's former Executive Manager of Safety Systems, was aware that tractor-trailer truck "[r]ollovers are fairly frequent [and represent] a larger percentage of injuries and death than some other types of accidents." (ECF No. 244, Ex. 2, at 107:12-16.) Defendant was aware of the occurrence of rollovers for all vehicle types. (ECF No. 249, at 2.)

- Mr. Ritchie has reviewed University of Michigan crash data for tractor-trailer trucks. (ECF No. 244, Ex. 2, at 5-19.) One University of Michigan study found that "ejection increases the probability of driver fatality by almost 286 times, . . .

---

and sometimes diametrically opposite, opinions about what the evidence in the case shows. These significant factual disputes between the parties and their experts reinforce the conclusion that there are genuine issues of material fact that must be resolved at trial by the fact-finder.

and rollover increases the risk of a driver fatality by almost 26 times, compared with no rollover. . . . While ejection is the most dangerous factor to the truck occupant, it occurs only in 9.2% of severe [] crashes, while rollover occurs in 63.1% of severe crashes . . . ." (ECF No. 244, Ex. 3, at 79-80.) Defendant does not dispute this study. (ECF No. 249, at 3.)

- "[T]he design of [the sleeper compartment access door was] defective in terms of rollover crashworthiness. . . . Doors of this type should not be added to the design unless they are thoroughly crashworthy." (ECF No. 206, Ex. 1, at 7-8.) Mr. Ritchie is not aware of Defendant ever having performed crashworthiness testing on the sleeper compartment doors of its tractors. (ECF No. 244, Ex. 2, at 32:25 – 34:1.) Ritchie is only aware of Defendant having tested the sleeper compartment doors for durability testing, which is designed to simulate a little more than a thousand miles of driving. (*Id.*) Defendant has, however, conducted testing on the front access doors of its tractors regarding what the doors could withstand in terms of force before coming open. (*Id.* at 73:21 – 74:7.)

- During the course of the accident, Bullock's body would have slid "from left to right towards the right side interior access door side panel of the cab, regardless of whether he was utilizing the ["tent system" restraint. The "tent system" restraint] is incapable of providing lateral (side to side) restraint to an occupant in the sleeper berth and is only designed to provide restraint to a forward moving body." (ECF No. 207, Ex. 1, at 34.) The tractor "was not equipped with an effective sleeper berth restraint system capable of preventing ejection in a rollover event." (ECF No. 206, Ex. 1, at 7.) Mr. Ritchie is not aware of Defendant

having conducted testing of the "tent system" restraint's ability to restrain movement side to side, and opined that a restraint system designed to prevent side-to-side movement would take a different form than the "tent system" restraint used by Defendant in its tractors. (ECF No. 244, Ex. 2, at 46:19 – 47:7; 55:24 – 56:4; 57:11 – 58:3. *See also* ECF No. 244, Exs. 10-11.)

This evidence, when viewed in a light most favorable to Plaintiffs, might lead a reasonable jury to conclude, beyond a reasonable doubt, that Defendant was conscious of its conduct and the existing conditions and knew or should have known that injury would result. *See* Colo. Rev. Stat. § 13-21-102(1)(b); *Coors*, 112 P.3d at 66; *Stamp*, 172 P.3d at 449. Viewing the evidence in a light most favorable to Plaintiffs: Defendant knew of the dangers of serious injury and death associated with truck rollovers and ejections, and knew that truck rollovers were the most common type of accident causing serious injury and death. Despite this knowledge, Defendant did not conduct crashworthiness testing on its sleeper compartment doors; used a "tent system" restraint that was only designed to prevent forward movement in the tractor, not side-to-side movement; and did not conduct side-to-side movement testing on its "tent system" restraint. Bullock's body slid sideways during the accident, and he was ejected through the sleeper compartment door. He likely would not have died had he not been ejected through the sleeper compartment door.

A jury could reasonably conclude beyond a reasonable doubt that Defendant acted consciously and purposely in its design of the sleeper compartment, the sleeper compartment door, and the "tent system" restraint, and in its decisions regarding the extent of crashworthiness testing it would conduct on these items. *See Palmer v. A.H.*

*Robins Co., Inc.*, 684 P.2d 187, 218 (Colo. 1984) ("Because manufacturers have the means for discovering and correcting product hazards through the processes of design, testing, inspection and data analysis, a manufacturer often will have the only access to much of the information necessary for effective control of dangers likely to face consumers in using the product."). A jury could also reasonably conclude beyond a reasonable doubt that Defendant knew or should have known that its design decisions, combined with its decisions regarding the extent of its crashworthiness testing, would result in injury. *See Coors*, 112 P.3d at 66; *Stamp*, 172 P.3d at 449.

Defendant argues that it could not have engaged in "willful and wanton conduct" because it was not already on notice of a similar prior accident, which it describes as an ejection of a sleeper compartment occupant through the sleeper compartment door. The evidence, viewed in a light most favorable to the Plaintiffs, indicates that Defendant was, however, on notice of the dangers of rollovers, including the specific dangers posed to drivers of tractor-trailer trucks and the specific dangers associated with ejections of drivers during such accidents. Defendant argues that this is an entirely different circumstance. (ECF No. 249, at 5 ("[T]he very data Plaintiffs rely on is inapposite to their claim because these studies . . . detail injuries and safety measures for truck *drivers*, not sleeper cab occupants.") (emphasis in original).) And there are two pieces of evidence that are arguably consistent with Defendant's alleged unawareness of the dangers to sleeper compartment occupants during rollovers. First, Defendant conducted crashworthiness testing on the front doors of its tractors, but did not conduct crashworthiness testing on the sleeper compartment doors. Second, Defendant's "tent system" restraint was only designed to prevent forward movement (based on frontal

impact), not side-to-side movement that would more likely occur during a rollover.

For one to have knowledge of the severe dangers to drivers of tractor-trailers from rollover accidents, without being aware that sleeper compartment occupants would be similarly endangered in the same type of accident, seems highly unlikely. An extension of Defendant's argument is that, no matter how highly defective and unreasonably dangerous a product is, the manufacturer can not be liable for exemplary damages for the first accident/injury that occurs using that highly defective and dangerous product. *See Rowan v. Vail Holdings, Inc.*, 31 F. Supp. 2d 889, 892-94, 900 (D. Colo. 1998) (finding triable issue of "willful and wanton" conduct by ski resort where skier died from running into a picnic deck, and where previously there had only been several close calls of injury to skiers near the deck). Here, the lack of evidence of a prior accident under the same circumstances (ejection through the sleeper compartment door) is only one relevant consideration in determining whether Defendant's conduct was "willful and wanton" (based on its manufacturing design decisions for the sleeper compartments and its knowledge that rollovers are one of the most dangerous accident scenarios involving its tractors. *See* Colo. Rev. Stat. § 13-21-102(1)(b); *Coors*, 112 P.3d at 66; *Stamp*, 172 P.3d at 449.

The decision in *Grabau v. Target Corp.*, 2008 WL 179442 (D. Colo. 2008), upon which Defendant relies, is to be distinguished. In *Grabau*, the plaintiff was injured when a vacuum cleaner fell on her from the top-shelf of a display at Target. *Id.* at *1. Prior to the accident, employees had failed to install a one inch safety rail along the front of the display shelf, as required by the display's "planogram." *Id.* The court denied the plaintiff's motion to amend her complaint to add a claim for exemplary damages, holding

11

that she had not made a prima facie showing of willful and wanton conduct because she had not demonstrated purposeful or deliberate conduct. *Id.* at *5-*8. The court appears to have based its decision primarily on two relevant facts. First, there was no evidence of prior incidents in which a vacuum cleaner had fallen on a store patron. *See id.* However, it is not clear that the court's decision would have been the same if there had been evidence of other types of products falling on customers due to a failure to install safety rails on those other displays (which is arguably the equivalent of Defendant's knowledge of the dangers to tractor-trailer drivers in rollovers). Second, the *Grabau* court appears to have also based its decision on the fact that Defendant was not even on notice that the safety rail had not been installed on the display until after the accident occurred, and therefore did not know that a current dangerous condition existed.[3] That is to be distinguished from this case, where Defendant's knowledge of the dangers of rollovers generally, and to drivers specifically, sufficiently

put Defendant on notice of the dangers to sleeper compartment occupants (when viewing the evidence in a light most favorable to Plaintiffs).

One of Defendant's stronger arguments concerns the alleged weakness of Plaintiffs' evidence showing that Bullock was in fact using the "tent system" restraint at the time of the accident. To win on their product liability claims regarding the "tent

---

[3] *See, e.g.*, *id.* at *7 (stating that the magistrate judge, in his prior recommendation, had noted that "none of the individuals deposed by the plaintiff[] were aware that the safety rail was not installed until after [the plaintiff] was allegedly injured by a falling vacuum cleaner"); *id.* at *8 ("Defendant was never notified of the dangerous condition."); *id.* (closing its opinion by emphasizing language in case law requiring that a defendant be "*cognizant of existing* [dangerous] *conditions*" for its conduct to be "willful and wanton") (emphasis in original).

12

system" restraint, Plaintiffs will need to prove by a preponderance of the evidence that the alleged defect caused Bullock's death.  If Bullock was not using the "tent system" restraint at the time of the accident, Plaintiffs will not be able to prove that the restraint's design allowing side-to-side movement caused his death.  In any event, the Court is not in a position based on this record to hold that no reasonable jury could conclude, by a preponderance of the evidence, that Bullock was using the restraint system at the time of the accident.  If the jury does so conclude and ultimately finds for Plaintiffs on their claim, the jury will consider whether the evidence shows, beyond a reasonable doubt, that Defendant engaged in "willful and wanton" conduct entitling Plaintiffs to exemplary damages.

## IV.  CONCLUSION

In accordance with the foregoing, it is therefore ORDERED that Defendant's Motion for Partial Summary Judgment Regarding Exemplary Damages is DENIED.

Dated this 2nd day of May, 2011.

BY THE COURT:

_____
William J. Martínez
United States District Judge