**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 08-cv-00491-WJM-MEH

AMY BULLOCK, as an individual, as the next of kin and personal representative of
JEFFREY BULLOCK, deceased, and as parent and next friend of ADAM BULLOCK,
CHELSEA BULLOCK, and MELISSA BULLOCK,

      Plaintiff,

v.

DAIMLER TRUCKS NORTH AMERICA, LLC, formerly known as Freightliner, LLC,

      Defendant.

---

## ORDER ON PLAINTIFF'S MOTION *IN LIMINE*

---

      Plaintiff Amy Bullock brings this products liability action against Defendant

Daimler Trucks North America, LLC, alleging that Plaintiff's husband's death in a 2006

truck rollover accident was caused by design defects in the truck, which was

manufactured by Defendant.

      This matter is before the Court on Plaintiff's Motion *in Limine.*  (ECF No. 344.)

The motion seeks to preclude evidence from being admitted at trial (1) of whether

Plaintiff's husband, Jeffrey Bullock, was using the safety restraint in the sleeper

compartment of the truck at the time of the accident, (2) of a separate truck accident

that occurred in 2008, and (3) of life insurance, Social Security, restitution, and workers'

compensation proceeds paid to Plaintiff following Mr. Bullock's death.  (*See id.*)  The

motion is fully briefed and ripe for disposition.  (*See also* ECF No. 354, 360.)  For the

following reasons, Plaintiff's Motion *in Limine* is GRANTED in part and DENIED in part,

with one issue being deferred for a ruling at a later date.

## I. ANALYSIS

"The admissibility of evidence in diversity cases in federal court is generally governed by federal law." *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 880 (10th Cir. 2006). "Nevertheless, it is well recognized that Congress did not intend the procedural rules to preempt the so-called substantive state rules of evidence . . . ." *Id.*; *see also Romine v. Parman*, 831 F.2d 944, 945 (10th Cir. 1987) (stating that, although "admissibility of evidence in diversity cases in federal court is generally governed by federal law," state law must be applied when "an evidentiary question is so dependent on a state substantive policy"). In addressing each evidentiary issue below, the Court will analyze what law applies as to each issue.

**A.    Evidence Regarding Whether Mr. Bullock Was Using the Safety Restraint at the Time of the Accident**

Plaintiff first asks the Court to exclude any evidence at trial of whether Mr. Bullock was using the safety restraint in the sleeper compartment of the truck at the time of the accident.[1] In support of the request, Plaintiff cites to Colorado Revised Statute § 42-4-237, which provides:

> (2) . . . [E]very driver of and every front seat passenger in a motor vehicle equipped with a safety belt system shall wear a fastened safety belt while the motor vehicle is being operated on a street or highway in [Colorado]. . . .
> (7) Evidence of failure to comply with the requirement of subsection (2) of this section shall be admissible to mitigate damages with respect to any

---

[1] Although it does not appear that the parties have formally stipulated that Mr. Bullock was riding in the sleeper compartment of the truck at the time of the accident (*see, e.g.*, ECF No. 226 ¶ 15; ECF No. 231 ¶ 15), there are indications that the parties agree on this point (*see, e.g.*, Defendant's MADYMO modeling analysis).

person who was involved in a motor vehicle accident and who seeks in
any subsequent litigation to recover damages for injuries resulting from
the accident. Such mitigation shall be limited to awards for pain and
suffering and shall not be used for limiting recovery of economic loss and
medical payments.

In short, this statute provides that "[e]vidence regarding lack of seat belt use [in the front

seat] is admissible at trial, but only to reduce an award of damages for pain and

suffering." *Wark v. McClellan*, 68 P.3d 574, 579 (Colo. App. 2003).

Plaintiff argues that "since Mr. Bullock was not a driver nor was he a front-seat

passenger [under the statute], evidence of his seat belt use cannot be used to reduce

his damages at all." (ECF No. 344, at 2.) Plaintiff appears to be arguing that, because

Colorado Revised Statute § 42-4-237(7) allows evidence of seat belt non-use by front

seat passengers to be admitted at trial for certain purposes, that means evidence of

seat belt non-use by other passengers cannot be admitted at trial.

Plaintiff's argument is logically flawed and lacks merit. Colorado Revised Statute

§ 42-4-237(2) only mandates seat belt use by drivers and front seat passengers of

motor vehicles. Section 42-4-237(7) allows evidence of seat belt non-use by drivers

and front seat passengers to be admitted at trial for certain purposes as an incentive to

promote seat belt use in the front seat. *See Anderson v. Watson*, 953 P.2d 1284, 1290

(Colo. 1998) ("By decreasing the amount of pain and suffering damages in proportion to

injuries attributable to seat belt non-use, the General Assembly sent a signal to drivers

and front-seat passengers to buckle up."). Section 42-4-237(2) has no applicability to

the seat belt use of passengers other than drivers and front seat passengers, and

section 42-4-237(7) in no way speaks to the issue of the admissibility of evidence

regarding a rear seat passenger's seat belt non-use. Therefore, section 42-4-237(7) is

3

inapplicable to Mr. Bullock's use or non-use of the safety restraint in the sleeper compartment, and has no bearing on the Court's decision regarding whether the evidence will be admissible at trial.[2]

The Court proceeds to make a pretrial ruling on whether Mr. Bullock's use or non-use of the safety restraint will be admissible at trial.[3]  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  Relevant evidence is generally admissible at trial, Fed. R. Evid. 402, but "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence," Fed. R. Evid. 403.

Evidence related to Mr. Bullock's use or non-use of the safety restraint at the time of the accident is highly relevant evidence in this action, and its probative value is not substantially outweighed by any competing concerns.  Plaintiff brings strict liability and negligence claims against Defendant based in part on the allegedly defective design of the safety restraint itself.[4]  Whether Mr. Bullock was using the safety restraint

---

[2] *Miller v. Solaglas California, Inc.*, 870 P.2d 559 (Colo. App. 1993), relied on heavily by Plaintiff, is inapplicable because that case involved the seat belt non-use of a *driver* of a vehicle who had gotten into an accident.

[3] Because Colorado Revised Statute § 42-4-237 has no applicability in this action, the default rule applies that federal law governs the admissibility of evidence of Mr. Bullock's use or non-use of the safety restraint.

[4] All of the specific design defects that form the basis for Plaintiff's claims are the truck's general lack of crashworthiness, the lack of crashworthiness of the sleeper

4

at the time of the accident is highly relevant to the issue of whether one or more design defects in the safety restraint *caused* Mr. Bullock's death.  *See Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1214 (10th Cir. 2004) (stating that, under Colorado law, causation is an essential element both of (1) a strict products liability claim based on a defective design, and (2) a negligent design claim); *Camacho v. Honda Motor Co., Ltd.*, 741 P.2d 1240, 1242-43 (Colo. 1987) ("Under [the 'crashworthiness' doctrine], a motor vehicle manufacturer may be liable in negligence or strict liability for injuries sustained in a motor vehicle accident where a manufacturing or design defect, though not the cause of the accident, caused or enhanced the injuries.").  If Mr. Bullock was not using the safety restraint at the time of the accident, it appears that Plaintiff will have a very difficult time establishing that a design defect in the safety restraint caused Mr. Bullock's death.  However, if Mr. Bullock was using the safety restraint at the time of the accident, Plaintiff's product liability claims as to the safety restraint remain viable.

The Court denies Plaintiff's Motion *in Limine* to exclude any evidence at trial of whether Mr. Bullock was using the safety restraint in the sleeper compartment at the time of the accident.[5]

---

compartment, and design defects in the safety restraint in the sleeper compartment. (*See* Third Amended Complaint, ECF No. 226 ¶¶ 44-46, 53.)

[5] In so ruling, the Court is not passing judgment on whether evidence of Mr. Bullock's use or non-use of the safety restraint would be admissible as evidence relevant to Plaintiff's claims of other design defects in the truck, namely, the truck's general lack of crashworthiness and the sleeper compartment's lack of crashworthiness. The Court instructs the parties to be prepared at the Final Pretrial Conference to discuss whether a limiting instruction to the jury might be appropriate on this issue.

**B.    Evidence of a Separate 2008 Truck Rollover Accident**

Plaintiff's motion also seeks to preclude evidence related to a separate 2008 tractor-trailer rollover accident, arguing that the 2008 accident is not substantially similar to the truck accident involving Mr. Bullock.  *See Wheeler v. John Deere Co.*, 862 F.2d 1404, 1407 (10th Cir. 1988) (case cited by Plaintiff, which states, "[F]ederal . . . law permit[s] the introduction of substantially similar accidents in strict products liability actions to demonstrate notice, the existence of a defect, or to refute testimony given by a defense witness that a given product was designed without safety hazards.") (quotation marks omitted).  In its supplemental response to the motion, Defendant has clarified that it does intend to introduce evidence of the 2008 accident in order to show "substantial similarity" to the accident at issue in this action, and also to more generally show the mechanics and physics of a tractor-trailer rollover.

In terms of Defendant's request to introduce evidence related to the 2008 accident for purposes of showing the general mechanics and physics of a tractor-trailer rollover, the Court denies Plaintiff's Motion *in Limine* as to Defendant's introduction of this evidence for that limited purpose.  *See Montag by Montag v. Honda Motor Co., Ltd.*, 75 F.3d 1414, 1420 (10th Cir. 1996) ("Tests and experiments may be dissimilar from the actual accident if they are meant to illustrate general physical principles rather than re-create the accident.").  If the evidence is only allowed for that limited purpose, a limiting instruction to the jury to that effect will be appropriate.  *See id.* ("If a simulation is offered, however, for the limited purpose of illustrating general principles, the district court should instruct the jury that the evidence is not intended as a re-creation of the accident.").

In terms of Defendant's request to introduce evidence related to the 2008 accident for purposes of showing "substantial similarity" to the accident at issue in this action, the Court does not have enough information before it at this time to rule on Plaintiff's Motion *in Limine* as to this issue, and hereby defers ruling on this issue until a later date. A separate hearing on this matter will be necessary, which will be held at a later date. At the hearing, Defendant will need to present evidence to the Court establishing the substantial similarity of the two accidents, and Plaintiff will be allowed to present evidence showing dissimilarity of the two accidents. *See Wheeler*, 862 F.2d at 1407 ("Before introducing such evidence, the party seeking its admission must show the circumstances surrounding the other accidents were substantially similar to the accident involved in the present case. While this foundation may be laid in the presence of the jury, the preferable approach is for the trial judge to hold a hearing outside its presence."). At the Final Trial Preparation Conference, the Court will discuss with the parties the scheduling of this hearing and the evidence to be presented at the hearing.[6]

**C.   Evidence of Life Insurance, Social Security, Restitution, and Workers' Compensation Proceeds Paid to Plaintiff Following Her Husband's Death**

Finally, Plaintiffs move, pursuant to the collateral source rule, to preclude evidence of life insurance, Social Security, restitution, and workers' compensation proceeds paid to Plaintiff following Mr. Bullock's death.

---

[6] The Court is not aware of any substantive Colorado rule of evidence or Colorado substantive policy that would require the Court to depart from the general rule that the Federal Rules of Evidence should govern the admissibility of the evidence related to the 2008 accident. Unless the parties at the Final Pretrial Conference can direct the Court to such a state rule or policy, the Court will apply federal law to the issue of the admissibility of this evidence.

The Court applies state law in determining whether the collateral source rule should bar admission of evidence regarding collateral sources of funds. *See Sims*, 469 F.3d at 880 ("[Federal procedural rules do not] preempt the so-called substantive state rules of evidence, such as the parol evidence rule, *the collateral source rule*, or the statute of frauds . . . .") (emphasis added); *Macsenti v. Becker*, 237 F.3d 1223, 1241 (10th Cir. 2001) (applying state law in determining whether evidence would be inadmissible under collateral source rule).

"Under the common law collateral source rule, . . . [a]ny third-party benefits or gifts obtained by the injured plaintiff accrue solely to the plaintiff's benefit and are not deducted from the amount of the tortfeasor's liability." *Volunteers of Am. Colo. Branch v. Gardenswartz*, 242 P.3d 1080, 1082-83 (Colo. 2010).  In 1986, the Colorado General Assembly passed Colorado Revised Statute § 13-21-111.6, which essentially overrules the collateral source rule except with one significant exception.  The statute provides,

> In any action by any person or his legal representative to recover damages for a tort resulting in death or injury to person or property, the court, after the finder of fact has returned its verdict stating the amount of damages to be awarded, shall reduce the amount of the verdict by the amount by which such person, his estate, or his personal representative has been or will be wholly or partially indemnified or compensated for his loss by any other person, corporation, insurance company, or fund in relation to the injury, damage, or death sustained; *except that the verdict shall not be reduced by the amount by which such person, his estate, or his personal representative has been or will be wholly or partially indemnified or compensated by a benefit paid as a result of a contract entered into and paid for by or on behalf of such person. The court shall enter judgment on such reduced amount.*

Colo. Rev. Stat. § 13-21-111.6 (emphasis added).

### 1.     Life Insurance

Plaintiff moves to preclude any evidence being admitted regarding life insurance

8

benefits paid to Plaintiff following Mr. Bullock's death.  Defendant responds by conceding that "life insurance is a collateral source."  The Court interprets Defendant's concession as a concession that any award of damages to Plaintiff in this action should not be reduced based on any life insurance proceeds paid to Plaintiff following Mr. Bullock's death.  The Court will not reduce any damage award to Plaintiff in this action based on any life insurance proceeds paid to Plaintiff following Mr. Bullock's death.  *See* Colo. Rev. Stat. § 13-21-111.6 (specifically excluding amounts by which the plaintiff "has been or will be wholly or partially indemnified or compensated by a benefit paid as a result of a contract entered into and paid for by or on behalf of such person"); *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1077 (Colo. 1992) (stating that the legislative history of the statute indicates that the legislature intended the exclusion to apply to "sources such as retirement benefits, disability benefits and life insurance"); *Frost v. Schroeder & Co., Inc.*, 876 P.2d 126, 128 (Colo. App. 1994) (stating that the purpose of the exclusion is "to allow recovery to a claimant who, through his or her own efforts, contracted for and purchased, either directly or indirectly, some type of insurance or other protection against accident- induced losses without penalizing such a person for his or her prudence and thereby providing a windfall for a culpable tortfeasor").  The Court grants Plaintiff's *Motion in Limine* to that extent on this issue.

### 2.      Social Security

Plaintiff also moves to preclude any evidence being admitted regarding Social Security payments made to Plaintiff following Mr. Bullock's death.  In its supplemental response to the motion, Defendant "concedes that *Barnett v. American Family Mut. Ins.*

*Co.*, 843 P.2d 1302, 1309 (Colo. 1993) makes Social Security benefits a collateral source under the Colorado Collateral Source Statute." The Court interprets Defendant's concession as a concession that any award of damages to Plaintiff in this action should not be reduced based on any Social Security payments made to Plaintiff following Mr. Bullock's death. The Court will not reduce any damage award to Plaintiff in this action based on any Social Security payments made to Plaintiff following Mr. Bullock's death. *See Barnett v. Am. Family Mut. Ins. Co.*, 843 P.2d 1302, 1309 (Colo. 1993) (holding that collateral source rule precluded setoff of Social Security benefits that were based on payments made under a contributory insurance system). The Court grants Plaintiff's *Motion in Limine* to that extent on this issue.

### 3.    Restitution

Plaintiff argues that restitution amounts being paid by non-party tortfeasor Donald Green to Plaintiff cannot be setoff from the damages Defendant owes to Plaintiff. Defendant entirely failed to respond to this argument. As the case cited by Plaintiff indicates, "§ 13-21-111.6 . . . applies to payments from a collateral source independent of any alleged tort liability. . . . [Thus, payments from tortfeasors are] not collateral sources [and] § 13-21-111.6 is inapplicable to [such payments]." *See Montoya v. Grease Monkey Holding Corp.*, 883 P.2d 486, 490 (Colo. App. 1994); *see also Smith v. Vincent*, 77 P.3d 927, 930 (Colo. App. 2003) (following *Montoya* and stating, "§ 13-21-111.6 does not require a reduction from the damages owed by remaining tortfeasors where a joint tortfeasor entered into a settlement"). Therefore, the Court will not reduce any damage award to Plaintiff in this action based on any restitution payments made to Plaintiff from Donald Green. The Court grants Plaintiff's *Motion in*

10

*Limine* to that extent on this issue.

### 4.      Workers' Compensation

Plaintiff finally moves to preclude any evidence being admitted regarding workers' compensation benefits paid to Plaintiff following Mr. Bullock's death.  Plaintiff represents to the Court that such payments were received by Plaintiff "as a result of Jeff Bullock's contracts of hire."  In support of the argument, Plaintiff cites *Combined Communications Corporation, Inc. v. Public Service Company of Colorado*, 865 P.2d 893 (Colo. App. 1993), which held, "the verdicts were not subject to being set off by the amounts of these benefits" because the "workers' compensation benefits were received as a result of the employees' contracts of hire." *Id.* at 902.  That court based its decision on the Colorado Supreme Court's decision in *Keelan*, in which the court held that the exception clause of section 13-21-111.6 should be read broadly "to protect benefits that result from an employment contract for which a person gives consideration in the form of services."  840 P.2d at 1078.

In response, Defendant cites to the workers' compensation statute itself, which reads,

> If any employee entitled to [workers'] compensation . . . is injured or killed by the negligence or wrong of another not in the same employ, such injured employee or, in case of death, such employee's dependents, may take compensation under said articles and may also pursue a remedy against the other person to recover any damages *in excess of the compensation available under said articles*.

Colo. Rev. Stat. § 8-41-203(1)(a) (emphasis added).  Defendant argues that this statute's plain language indicates that Plaintiff may only recover amounts the jury awards in this action that are in excess of the workers' compensation benefits she has

already received.  Thus, Defendant argues that any jury award to Plaintiff should be reduced by the Court by any workers' compensation payments made to Plaintiff.

The Court has not found a case explicitly reconciling this workers' compensation statute with Colorado Revised Statute § 13-21-111.6 (Colorado's collateral source rule). The closest any court has come to doing so is *Combined Communications Corp.*, 865 P.2d 893 (Colo. App. 1993), which did not explicitly discuss the workers' compensation statute, but did hold that workers' compensation payments made pursuant to contracts of employment are not subject to setoff.[7]

None of the cases cited by Defendant in its Response and Supplemental Response address the issue of the collateral source rule as it is applied to workers' compensation payments.  Instead, those cases generally deal with the rights of the workers' compensation carrier as compared to the rights of the injured employee, in terms of each's recovery of proceeds won in a lawsuit brought against a third party tortfeasor.  The Court interprets the workers' compensation statute, these cases, and other relevant cases as merely standing for the proposition that a workers' compensation carrier has a right to reimbursement of any workers' compensation payments made to an injured employee, if that employee brings an action alone against a third party tortfeasor and wins a settlement or jury award.  *See Kirkham v. Hickerson Bros. Truck Co.*, 485 P.2d 513, 310 (Colo. App. 1971) ("[A]n injured employee does not lose or waive his right of action against a third party by exercising his rights under a

---

[7] Defendant cursorily argues that *Combined Communications Corp.* "is inapposite, primarily because the Court was not asked to and did not address the issue of the statutory separation of claims between the workers' compensation insurer and the claimant in the context of a third party tort claim."

workmen's compensation act. . . . [S]uch acts do not concern rights of action by employees against third party tortfeasors, except as to the proper allocation of the amounts recovered under such actions equitably between the employee and the employer.") (quotation marks omitted); *Cont'l Cas. Co. v. Gate City Steel*, 650 P. 2d 1336, 1338 (Colo. App. 1982) ("The purpose of [the workers' compensation statute] is to adjust rights between the insurer and the employee by requiring that the insurer be reimbursed out of the employee's recovery against the third-party tortfeasor for worker's compensation benefits paid by the insurer, leaving the employee with the excess."); *see also Jordan v. Fonken & Stevens, P.C.*, 914 P.2d 394, 395 (Colo. App. 1995) ("The purpose of [Colo. Rev. Stat. § 8-41-203(1)] is to adjust the rights between a claimant and an insurer by requiring reimbursement to the insurer out of the claimant's recovery against a third-party tortfeasor, thereby preventing a claimant's double recovery of both workers' compensation benefits and litigation proceeds."); *Frohlick Crane Service, Inc. v. Mack*, 510 P.2d 891, 893 (Colo. 1973) ("[O]ur Workmen's Compensation Act is not to shield third-party tort-feasors from liability for damages resulting from their negligence.").

The Court's role is not to reduce the amount of damages for which Defendant will be liable simply because Plaintiff has received workers' compensation payments from Mr. Bullock's former employer (which would result in the inefficiency of Mr. Bullock's former employer, who is not a current party to this action, having to go after Defendant to recover the workers' compensation payments it had paid to Plaintiff). Instead, after any settlement or jury award in favor of Plaintiff, the law indicates that Mr. Bullock's former employer could seek reimbursement from Plaintiff for any workers' compensation

proceeds paid to her.  The Court will not reduce any damage award to Plaintiff in this action based on any workers' compensation payments made to Plaintiff following Mr. Bullock's death.  *See Combined Commc'ns Corp.*, 865 P.2d at 902.  The Court grants Plaintiff's *Motion in Limine* to that extent on this issue.

As to all of these collateral sources, the Court also agrees that evidence of such payments will be inadmissible at trial because the evidence's probative value, if any, "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."  Fed. R. Evid. 403.  For the same reasons that it is not appropriate for the Court to offset any damages award by the amounts of these payments, it is not appropriate for evidence to be presented at trial regarding these payments, or for any mention of these payments to be made at trial by counsel on either side or by any witnesses.  The Court therefore grants, without limitation, Plaintiff's *Motion in Limine* as to evidence of collateral sources of funds received by Plaintiff following Mr. Bullock's death.

## II.  CONCLUSION

In accordance with the foregoing, it is therefore ORDERED as follows:

1.      Plaintiff's Motion *in Limine* is GRANTED in so much as the Court has ruled that evidence of any life insurance, Social Security, restitution, or workers' compensation proceeds paid to Plaintiff following Mr. Bullock's death will be inadmissible at trial.

2.      Plaintiff's Motion *in Limine* is DENIED in so much as the Court has ruled that evidence of Mr. Bullock's use or non-use of the safety restraint in the

14

sleeper compartment at the time of the accident will be admissible at trial as to Plaintiff's claim that one or more design defects of the safety restraint caused Mr. Bullock's death.

3.      Plaintiff's Motion *in Limine* is also DENIED in so much as the Court has ruled that Defendant will be allowed to introduce evidence at trial related to a 2008 tractor-trailer rollover accident for the limited purpose of showing the general mechanics and physics of a tractor-trailer rollover accident.

4.      The Court hereby reserves ruling on the issue of whether Defendant will be allowed to introduce evidence at trial related to the 2008 tractor-trailer rollover accident for the purpose of showing "substantial similarity" with the accident at issue in this action.

Dated this 28th day of September, 2011.

BY THE COURT:

_____

William J. Martínez
United States District Judge