**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 08-cv-00491-WJM-MEH

AMY BULLOCK, as an individual, as the next of kin and personal representative of JEFFREY BULLOCK, deceased, and as parent and next friend of ADAM BULLOCK, CHELSEA BULLOCK, and MELISSA BULLOCK,

    Plaintiff,

v.

DAIMLER TRUCKS NORTH AMERICA, LLC, formerly known as Freightliner, LLC,

    Defendant.

**ORDER**

Plaintiff Amy Bullock brings this products liability action against Defendant Daimler Trucks North America, LLC, alleging that Plaintiff's husband's death in a 2006 tractor-trailer rollover accident was caused by design defects in the truck, which was manufactured by Defendant.

This matter is before the Court for decision on two trial-related evidentiary issues originally identified by the parties in their briefing on Plaintiff's Motion *in Limine* (ECF Nos. 344, 354, 360), and discussed by the Court in its Order on the Motion *in Limine* (ECF No. 365).  The issues are:  (1) whether Defendant will be allowed to show a video to the jury at trial of a different 2008 tractor-trailer rollover for purposes of showing "substantial similarity" to the accident at issue in this action; and (2) whether a limiting instruction should be given to the jury instructing it that evidence of the decedent's use or non-use of a safety restraint should only be considered as to Plaintiff's claim that the

safety restraint itself was defective/unreasonably dangerous (and should not be considered as to Plaintiff's claim that the truck generally and the sleeper compartment specifically were not crashworthy).  At a hearing held on January 3, 2012, the Court received evidence from the parties on the first issue, and also allowed the parties to present oral argument on the second issue.  (ECF No. 371.)  The Court now proceeds to analyze and resolve the two issues.

## I.  ANALYSIS

### A.   Video of Different Tractor-Trailer Rollover Accident

The tractor-trailer rollover accident at issue in this action occurred on August 15, 2006 on Highway 50 near Monarch Pass in Gunnison County, Colorado.  At the time of the accident, Don Green was driving the tractor-trailer, and the decedent Jeffrey Bullock was riding in the sleeper compartment of the tractor.  The parties agree that during the accident, the tractor and trailer rolled and came to rest at the bottom of an embankment next to the roadway.  (ECF No. 226, ¶ 19; ECF No. 231, ¶ 19.)  There is no video of this accident.  The record indicates that the parties have invested significant resources, including hiring expert witnesses, to attempt to reconstruct what occurred during the accident.  For example, Defendant has created a computer animation of the accident, called a MADYMO modeling analysis, allegedly showing how Mr. Bullock's body moved in the tractor during the course of the accident.  (ECF No. 317.)  The Court has already ruled that this animation will not be admissible as substantive evidence at trial, but that one of Defendant's experts, Dr. Harry Smith, will be allowed to show the animation to the jury during his testimony in order to illustrate the principles Dr. Smith employed in

rendering his opinions.  (ECF No. 331.)

Defendant now also seeks to show a video recording at trial of a different tractor-trailer rollover accident that over two years later, on September 8, 2008, near Donner Pass in California ("the Donner Pass accident").  In the briefing on Plaintiff's Motion *in Limine*, Defendant clarified that it seeks to show the video of the Donner Pass accident at trial not only to show the general mechanics and physics of a tractor-trailer rollover, but also to show that the Donner Pass accident was "substantially similar" to the accident at issue.  (*See* ECF No. 360.)  The Court has already ruled that Defendant will be allowed to show the video of the Donner Pass accident at trial for purposes of showing the general mechanics and physics of a tractor-trailer rollover, but the Court reserved ruling on whether Defendant would be allowed to show the video for purposes of establishing "substantial similarity" to the accident at issue.  (ECF No. 365, at 6-7.)

At the January 3, 2012 hearing before this Court, Defendant presented evidence attempting to establish the "substantial similarity" of the two accidents.  (ECF No. 371.)  The only witness who presented live testimony at the hearing was Dr. Robert J. Butler, one of Defendant's experts.  Both parties also submitted exhibits to the Court for consideration, to which there were no objections.  Those exhibits are:  (1) the video of the Donner Pass accident; (2) the report and supplemental report of Dr. Butler; (3) a PowerPoint presentation created by Dr. Butler; (4) an excerpt of the transcript of the deposition of Dr. Stephen Batzer, one of Plaintiff's experts; (5) the transcript of the deposition of Officer James Sherman, a California Highway Patrol officer who investigated the Donner Pass accident; and (6) two other exhibits to Mr. Sherman's deposition (other than the video of the accident).

This issue is now ripe for adjudication.

"The admissibility of evidence in diversity cases in federal court is generally governed by federal law." *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 880 (10th Cir. 2006). "Nevertheless, it is well recognized that Congress did not intend the procedural rules to preempt the so-called substantive state rules of evidence . . . ." *Id.*; *see also Romine v. Parman*, 831 F.2d 944, 945 (10th Cir. 1987) (stating that, although "admissibility of evidence in diversity cases in federal court is generally governed by federal law," state law must be applied when "an evidentiary question is so dependent on a state substantive policy"). In the Court's September 28, 2011 Order on Plaintiffs' Motion *in Limine*, the Court noted,

> The Court is not aware of any substantive Colorado rule of evidence or Colorado substantive policy that would require the Court to depart from the general rule that the Federal Rules of Evidence should govern the admissibility of the evidence related to the [Donner Pass] accident. Unless the parties . . . can direct the Court to such a state rule or policy, the Court will apply federal law to the issue of the admissibility of this evidence.

(ECF No. 365, at 7 n.6.) At the January 3, 2012 evidentiary hearing before the Court, neither party called into question the Court's conclusion that the Federal Rules of Evidence should govern the admissibility of the video of the Donner Pass accident. The Court finds it proper to apply the Federal Rules of Evidence to this issue.

Federal Rule of Evidence 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Relevant evidence is generally admissible at trial, Fed. R. Evid. 402, but a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of

4

the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403. "The district court has considerable discretion in performing the Rule 403 balancing test." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001).

The Court has thoroughly reviewed the video of the Donner Pass accident, all of the other exhibits submitted to the Court by the parties at the January 3, 2012 hearing, the transcript of the January 3, 2012 hearing, and the arguments made by both parties in their briefing on Plaintiff's Motion *in Limine*. Based on this review, the Court has concluded that Defendant will only be allowed to show the video of the Donner Pass accident at trial for purposes of showing the general mechanics and physics of a tractor-trailer rollover, and not for purposes of showing an allegedly "substantially similar" accident to the accident at issue. At trial, the Court will provide a fairly strongly-worded limiting instruction to the jury to clarify the limited purpose for which the video of the Donner Pass accident may be considered.

The video constitutes relevant evidence in this action because it will assist the jury in understanding Dr. Butler's opinions regarding (1) the basic mechanics and physics of how tractor-trailers generally begin to roll in rollover accidents, and (2) how the tractor-trailer began to roll in the accident at issue. Specifically, Dr. Butler's (paraphrased) testimony at the January 3, 2012 hearing was that the video will assist the jury in understanding how, during a typical tractor-trailer rollover accident, (1) the accident begins by the trailer "sliding out" on the roadway, (2) the trailer begins to roll before the tractor, (3) in rolling, the trailer begins pulling on the tractor, forcing the tractor to begin to roll in the same direction, and (4) when the tractor begins to roll, it at

5

least initially rolls at a faster rate than the trailer in order to "catch up" with the alignment of the trailer. The Court finds this evidence to be relevant to Plaintiff's theories regarding how the tractor-trailer rollover at issue occurred, which is ultimately relevant to Plaintiff's claims and Defendant's defenses. The relevance of this evidence, for purposes of showing the general mechanics and physics of a tractor-trailer rollover, is not substantially outweighed by any competing concerns listed in Federal Rule of Evidence 403.

However, for other purposes, including showing "substantial similarity," the Court holds that the relevance of the video of the Donner Pass accident is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. *See* Fed. R. Evid. 403. First, there is insufficient evidence that the two accidents are substantially similar, lessening the relevance of the video of the Donner Pass accident. For example, Dr. Butler's report and hearing testimony indicates his belief that the tractor-trailer at issue in this action was traveling between 44 and 56 miles per hour at the time of the accident. However, in his deposition, Officer Sherman testified that, based on his investigation, the truck in the Donner Pass accident was going at least 65 miles per hour at the time of the accident. Also, Dr. Butler's report and hearing testimony indicates his belief that the tractor-trailer at issue in this action rolled approximately 315 degrees during the course of the accident (nearly one full revolution), and ended up at the bottom of a 25-foot ravine. However, Dr. Butler's hearing testimony and Dr. Sherman's deposition testimony indicate that the truck in the Donner Pass accident rolled between 90 and 180 degrees total during the course of the accident, and ended up within one truck width of the side of the roadway.

In addition, the Court concludes that the danger of unfair prejudice, confusing the issues, and misleading the jury is great. Importantly, Defendant's trial brief clarifies that it seeks to introduce evidence to the jury regarding the negligence of Don Green, the driver of the tractor-trailer, in causing the accident at issue. The Court believes the video of the Donner Pass accident is therefore unfairly prejudicial and potentially misleading given the nature of that accident. The video of the Donner Pass accident was shot from the front of a Wal-Mart truck that was traveling in the right lane of the roadway at the time of the accident. The video first shows a white pickup truck pass the Wal-Mart truck on the left. The video then shows the tractor-trailer pass the Wal-Mart truck on the left. The way in which the tractor-trailer was traveling at the time is quite notable in two respects. First, the tractor-trailer appeared to be traveling in an unsafe manner in relation to the Wal-Mart truck. The tractor-trailer passes the Wal-Mart truck very quickly (reflecting the high speed in which the tractor-trailer was traveling). Also, the tractor-trailer passes very close to the Wal-Mart truck (on the far right side of the left lane), so close that it appears the Wal-Mart truck's driver felt compelled to pull his truck far to the right and partially onto the shoulder of the roadway. Second, the tractor-trailer, given how fast it was traveling, appeared to be traveling too close to the white pickup truck in front of it. These images of an out-of-control truck are unfairly prejudicial in relation to Defendant's claim that it should be shielded from liability, or its liability should be lessened, due to Mr. Green's alleged negligence in his driving of the tractor-trailer at issue. The Court is not aware of any evidence in this case indicating that Mr. Green was following too closely behind another vehicle, or that Mr. Green wildly passed another vehicle immediately before the accident occurred. Notably, Dr. Butler's

PowerPoint presentation indicates that the roadway on which Mr. Green was driving at the time of the accident had only a single lane of traffic in that direction (no passing lane). Therefore, the Court holds that the video of the Donner Pass accident may only be shown at trial for purposes of showing the general mechanics and physics of a tractor-trailer rollover accident.

Finally, the Court notes that the video presented by Defendant at the January 3, 2012 hearing contained not only moving images showing the Donner Pass accident occurring, but also contained still images of the scene following the accident, including the damaged tractor-trailer. The Court concludes that there is less indication that any of these still images are relevant (the two trucks rolled different amounts and presumably incurred different damage), and any relevance the still images might have is substantially outweighed by the danger of confusion of issues and misleading the jury. The Court directs Defendant to delete these post-accident still images from the video. Defendant will only be allowed to show the video at trial containing the moving images showing the Donner Pass accident actually occurring.

**B.    Limiting Instruction Regarding Decedent's Use or Non-Use of Safety Restraint**

In the parties' briefing on Plaintiff's Motion *in Limine*, they also addressed the issue of whether evidence regarding Mr. Bullock's use or non-use of the safety restraint in the sleeper compartment of the tractor should be admissible at trial. In the Court's September 28, 2011 Order on Plaintiff's Motion *in Limine*, the Court held that evidence of Mr. Bullock's use or non-use of the safety restraint was highly relevant, and would be admissible, as to Plaintiff's claim that the safety restraint itself was defective or

8

unreasonably dangerous. (ECF No. 365, at 2-5.) In so ruling, the Court noted,

> [T]he Court is not passing judgment on whether evidence of Mr. Bullock's use or non-use of the safety restraint would be admissible as evidence relevant to Plaintiff's claims of other design defects in the truck, namely, the truck's general lack of crashworthiness and the sleeper compartment's lack of crashworthiness. The Court [reserves ruling on] whether a limiting instruction to the jury might be appropriate on this issue.

(*Id.* at 5 n.5.) At the January 3, 2012 hearing before the Court, the parties presented argument on this issue.

In reviewing the further briefing by the parties in their trial briefs, and in considering the arguments presented by the parties at the January 3, 2012 hearing, the Court believes it is appropriate to revisit the basis for its September 28, 2011 ruling on Plaintiff's Motion *in Limine* as to this issue (although the result of the ruling will be the same). The Court revisits the issue and resolves it as follows.

There is a substantive common law evidentiary policy recognized in Colorado that precludes admission of evidence of a failure to wear a seat belt (or safety restraint) to limit the liability of a defendant, for example, based on contributory negligence. *See Pringle v. Valdez*, 171 P.3d 624, 627-28 (Colo. 2007); *Fischer v. Moore*, 517 P.2d 458, 460 (Colo. 1973). However, the Colorado General Assembly, in passing Colorado Revised Statute § 42-4-237(7), created a limited exception to this policy, allowing for the admission of evidence of seat belt non-use by drivers and front-seat passengers to mitigate non-economic damages. *See* Colo. Rev. Stat. § 42-4-237(7); *Pringle*, 171 P.3d at 628-32. However, that statute is not properly read as affecting the general common law rule as it is applied to seat belt non-use by passengers **other than** drivers and front seat passengers. Mr. Bullock was riding in the sleeper compartment of the tractor at the

time of the accident, and therefore was not driving or a front seat passenger.  Colorado Revised Statute § 42-4-237(7) therefore does not apply here, and so the general common law rule does apply.[1]  The Court holds that evidence of Mr. Bullock's use or non-use of the safety restraint will therefore be inadmissible at trial as to Plaintiff's product liability claims based on the truck's general lack of crashworthiness and the sleeper compartment's lack of crashworthiness.

However, the Court holds that this general common law rule cannot be properly applied to Plaintiff's claim that the safety restraint itself was defective or unreasonably dangerous.  As explained by the Court in its September 28, 2011 Order, to succeed on this claim, Plaintiff will need to show that the alleged defect in the safety restraint caused or enhanced Mr. Bullock's injuries.  *See Truck Ins. Exch. v. MagneTek, Inc.,* 360 F.3d 1206, 1214 (10th Cir. 2004); *Camacho v. Honda Motor Co., Ltd.*, 741 P.2d 1240, 1242-43 (Colo. 1987).  The question of whether or not Mr. Bullock was using the safety restraint at the time of the accident is highly relevant to the issue of whether a defect in the safety restraint caused or enhanced Mr. Bullock's injuries.  The specific common law rule at issue must give way to more fundamental requirements of proving the elements of a legal claim.  Plaintiff has cited no case law in which a court has ruled that the common law rule should apply to a product liability claim based on a defect in the

---

[1] The Court concludes that, only as to this very limited issue of Mr. Bullock's use or non-use of the safety restraint, this substantive evidentiary policy should be applied rather than federal evidentiary rules.  *See Sims*, 469 F.3d at 880 ("[I]t is well recognized that Congress did not intend the procedural rules to preempt the so-called substantive state rules of evidence . . . ."; *Romine*, 831 F.2d at 945 (stating that, although "admissibility of evidence in diversity cases in federal court is generally governed by federal law," state law must be applied when "an evidentiary question is so dependent on a state substantive policy").

seat belt itself.  In fact, at the January 3, 2012 hearing, Plaintiff's counsel conceded that Mr. Bullock's non-use of the safety restraint would be a complete defense to Plaintiff's claim that the safety restraint was defective or unreasonably dangerous.  Therefore, the Court concludes that evidence regarding Mr. Bullock's use or non-use of the safety restraint will be admissible at trial as to Plaintiff's claim that the safety restraint itself was defective or unreasonably dangerous.

At trial, the Court will give a limiting instruction to the jury on this issue, clarifying that evidence of Mr. Bullock's use or non-use of the safety restraint will only be admissible as to Plaintiff's claim that the safety restraint itself was defective or unreasonably dangerous, and should in no way be considered as to Plaintiff's claim that the truck generally and the sleeper compartment specifically were not crashworthy.

**C.     Proposed Drafts of the Two Limiting Instructions**

As part of the proposed jury instructions submitted by the parties prior to the Final Trial Preparation Conference in this action, the parties shall submit proposals for the two limiting instructions discussed in this Order.  As with the parties' other proposed jury instructions, the parties shall, to the maximum extent possible, agree and stipulate as to the two proposed limiting instructions.  *See* WJM Revised Practice Standard VI.B.  The parties' two proposed limiting instructions should be drafted in a way that takes into account the analysis and considerations discussed by the Court herein.

## II.  CONCLUSION

In accordance with the foregoing, the Court ORDERS as follows:

1.      Defendant will only be allowed to show the video of the Donner Pass

accident at trial for purposes of showing the general mechanics and physics of a tractor-trailer rollover, and not for purposes of showing an allegedly "substantially similar" accident to the accident at issue. At trial, the Court will give a fairly strongly-worded limiting instruction to the jury on this issue.

2. Evidence of Mr. Bullock's use or non-use of the safety restraint will be admissible at trial as to Plaintiff's claim that the safety restraint itself was defective or unreasonably dangerous, but will be inadmissible as to Plaintiff's claims regarding the truck's general lack of crashworthiness and the sleeper compartment's lack of crashworthiness. At trial, the Court will give a limiting instruction to the jury on this issue.

3. As part of the parties' proposed jury instructions in this action, the parties shall submit proposals for the two limiting instructions discussed herein.

Dated this 17th day of January, 2012.

BY THE COURT:

William J. Martínez
United States District Judge